On Rehearing Ex Mero Motu

SHORES, Justice.
This Court’s order of June 24,1994, affirming the judgment, without opinion, and its July 29, 1994, order denying rehearing, are withdrawn.
Curtis T. Spivey III and his wife Sheryl H. Spivey appeal from a judgment based on a jury verdict for First Commercial Bank on the Spiveys’ fraud claim and based on the jury’s determination that the entire balance of the promissory note was subject to a mortgage held by First Commercial. We affirm in part, reverse in part, and remand.
This appeal arises from two cases consolidated for trial. On October 2, 1991, First Commercial Bank filed a complaint against the Spiveys, seeking a judgment on a promissory note and a judicial foreclosure on mortgages executed by the Spiveys to secure the note. On October 4,1991, the Spiveys filed a complaint against First Commercial, in which they alleged breach of contract, breach of fiduciary duty, and fraud. They alleged that First Commercial had fraudulently induced them to enter into a loan agreement on October 81,1990, and to give a mortgage on their property, by falsely representing to the Spi-veys that they would be able to use the entire proceeds of the loan to pay for construction of their residence — they alleged that in fact a substantial portion of the loan proceeds were actually used by First Commercial to pay off unsecured business-related loans of Curtis Spivey and Curt’s Cars, Inc.
The transactions that led to this appeal began in February 1990, when Curtis T. Spivey III, as president of Curt’s Cars, Inc., executed a promissory note to First Commercial Bank, specifically for business purposes. From February 1990 through June 1990, Curt’s Cars, Inc., through Spivey as its president, entered into other business loan agreements with First Commercial Bank. None of the documents relating to those loans refers to personal purposes or to residential construction purposes. The Bank charged an interest rate on these business loans equal to the prime rate plus one percent.
On August 13, 1990, the Spiveys executed a promissory note to First Commercial Bank in the amount of $150,000 at an interest rate equal to the prime rate plus two percent. The note stated on its face that it was for construction of a personal residence located at Route 1, Box 533, Pinson, Alabama. In connection with the promissory note, the Spi-veys gave First Commercial a first mortgage on the real property where the Spiveys’ home was located and upon which the new house was to be constructed. This promissory note contained a statement providing that no modification of the note or any agreement securing the note was effective unless in writing and signed by the borrower and the lender.
The Spiveys executed a second promissory note, also secured by a mortgage on their real property, to First Commercial Bank on October 31, 1990, in the amount of $332,000. On the face of this note, the purpose is stated as being “construction” and “personal.” The Spiveys also, at the same time, executed a construction loan agreement, which stated that the purpose of the loan was to pay the cost of construction. Both the note and the loan agreement contained statements providing that no modification of the note was effective unless in writing and signed by the borrower and the lender. The Spiveys also signed a “Truth-in-Lending Disclosure Form.” On that form, under the column entitled “Amounts Paid to Others on My Behalf,” there are no entries.
*122 On November 6, 1990, First Commercial disbursed funds from the Spiveys’ construction line of credit to satisfy the business debts of Curt’s Cars, Inc., and Curtis Spivey. The Spiveys contend'that the disbursement was made without their knowledge or acquiescence. The evidence reflects that the promissory note executed by the Spiveys on October 31, 1990, was altered by First Commercial after they had signed it, to add the designation “Master Note,” to add the designation “Amended,” and to list the loan numbers of Curt Spivey’s business loans. The Bank contends that the Spiveys did not complain about the disbursement of funds from the October 31, 1990, line of credit until July 1991. The Spiveys argue that they complained to the Bank upon learning of the disbursement.
On May 20, 1991, the Spiveys signed a renewal note, which matured on August 20, 1991. The Spiveys made none of the interest payments on that loan, and on September 3, 1991, First Commercial sent a letter to the Spiveys informing them that they were in default. First Commercial Bank then sued the Spiveys on the promissory note of May 20, 1991, and sought foreclosure of the mortgage securing the note. The Spiveys sued First Commercial, alleging fraud and breach of contract. The cases were consolidated for trial.
The cases were tried in April 1993. At the beginning of his charges to the jury, the trial judge directed a verdict in favor of First Commercial Bank on the promissory note of May 20,1991, for $331,936.65, stating:
“I have decided as a matter of law that Curtis Spivey is liable for the full amount of the note plus interest accrued on the note from May 20, 1991, until the date of the judgment. The question still remaining for you to decide is the amount of the indebtedness owed to First Commercial which is subject to the mortgage.”
The trial judge then propounded these written interrogatories to the jury:
[[Image here]]
The jury returned a verdict for First Commercial on the Spiveys’ fraud claim and a holding that the amount of indebtedness owed to First Commercial Bank that was subject to the mortgage was $331,936.65. The Spiveys then filed a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied, and they appealed.
The Spiveys contend that the trial court erred to reversal in charging the jury. SpecificaHy, they question the trial court’s failure to charge the jury on the Statute of Frauds and on the law of “set-off’ as to *123 special accounts. They also argue that the trial court erred by instructing the jury on the law of agency.
The Spiveys requested the following jury instruction based on the Statute of Frauds, Ala.Code 1975, § 8-9-2(7):
“An agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provision of such an agreement or commitment is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by that party to be charged therewith or some other authorized persons by him thereunto lawfully authorized in writing.”
The construction loan agreement signed by the Spiveys, by its written terms, required that any amendment, waiver, or modification of that agreement be in writing, and be signed by the parties to be bound. Neither the promissory note nor the construction loan agreement contained any authority for any portion of the loan proceeds to go toward satisfying the debts of other entities, yet First Commercial altered the promissory note after it had been signed by the parties, to include a reference to the business debts of Curtis Spivey. This made necessary a jury instruction on the Statute of Frauds.
The Spiveys next contend that the trial court erred in failing to instruct the jury as to the law of “set-off.” They argue that the $332,000 construction loan with First Commercial constituted a “special account,” under the law of Alabama, and, therefore, that First Commercial was prohibited from setting off personal and business debts of other legal entities from the proceeds of the construction loan. First City Nat'l Bank of Oxford v. Long-Lewis Hardware Co., 363 So.2d 770, 772 (Ala.1978); Coffee County Bank Corp. v. Mitchum, 634 So.2d 148, 150 (Ala.Civ.App.1993). It is settled law in Alabama that where the customer has made a deposit for a “special purpose” known to the bank, the bank may not set the deposit off against a loan. Rainsville Bank v. Willingham, 485 So.2d 319, 323 (Ala.1986). Whether the $332,000 loan was actually a “special account” was a matter that was contested at trial; this question necessitated instructions to the jury.
The Spiveys argue that the trial court erred in instructing the jury on agency, because the Truth-in-Lending Act', 15 U.S.C. §§ 1601-1667 requires that all obligors be given actual notice of the material terms of the loan. The Spiveys contended at trial that Mrs. Spivey was never informed by First Commercial that a large portion of the proceeds of the October 31, 1990, loan was to be used to pay off Mr. Spivey’s business debts with First Commercial. At trial, First Commercial argued that Curtis Spivey was Sheryl Spivey’s agent and that notice to Curtis Spivey as to how the funds were going to be disbursed was sufficient for Sheryl Spivey also. Thus, the Spiveys say, when the trial court instructed the jury on the law of agency, this compounded the error.
When examining a jury charge that a party claims was erroneous, this Court looks to the entirety of the charge to see if there is reversible error. Grayco Resources, Inc. v. Poole, 500 So.2d 1030 (Ala.1986); Shoals Ford, Inc. v. Clardy, 588 So.2d 879 (Ala.1991). See Gist v. Vulcan Oil Co., 640 So.2d 940, 942 (Ala.1994). Considering the charge as a whole, we conclude that the court’s errors in giving its jury charge “probably injuriously affected substantial rights” of the Spiveys; therefore, we must further conclude that the trial court erred to reversal. Rule 45, Ala.R.App.P.
That portion of the judgment based on the directed verdict in favor of First Commercial was not challenged on this appeal; that portion of the judgment based upon that directed verdict is affirmed. That portion of the judgment based upon the jury verdict is reversed, and the cause is remanded for a new trial.
ORDERS OF JUNE 24,1994, AND JULY 29, 1994, WITHDRAWN; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and KENNEDY, INGRAM, and COOK, JJ., concur.
MADDOX, HOUSTON, and BUTTS, JJ., concur in part and dissent in part.